In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-21-00409-CR

ANTHONY FRANK PENNA, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 21-07-10049-CR**

**MEMORANDUM OPINION**

Following his conviction of Aggravated Sexual Assault, Anthony Frank Penna appeals the trial court's decision to exclude a TikTok video made by the complainant (Amy) during the guilt innocence phase of his trial.[1] *See* Tex. Penal Code Ann. § 22.021. We affirm.

_____

[1] To protect the victim's privacy, we have used pseudonyms for some of the names including the child's name. *See* Tex. Const. art. I, § 30(a)(1) ("A crime victim has the ... right to be treated with fairness and with respect for the victim's dignity

1

# I. Issue One

We limit our discussion of the background to the single issue on appeal. Penna is married to Amy's older sister. In 2019, Amy went to her grandmother's home where Amy's sister, Penna, and her cousin were watching a baseball game, cooking steaks, and drinking alcohol. Amy's sister and Penna lived in a room in the grandmother's house. Amy stayed the night at her grandmother's house and slept on the couch in her sister's and Penna's room. Amy testified that Penna sexually assaulted her during the night, while she was trying to sleep on the couch, and that she left the next morning to go back to her home. At home, Amy took a shower, and told a friend about the assault. The friend encouraged Amy to tell her father. Penna was subsequently arrested and charged with aggravated sexual assault.

At trial, the following exchange occurred over the admission of a fourteen-second TikTok video Amy recorded the morning after the alleged assault.

> [DEFENSE ATTORNEY 1]: And there are other things that go to the issue of emotional stability. She has had a proclivity for posting very inappropriate videos.
>
> …
>
> THE COURT: Well, it sounds like you do. I'll be honest. It sounds like you do because you're saying you want to show she's mentally unstable. You want to put on specific bad acts of her posting things. Are these five years previous? Are they two years previous? Are they

and privacy."); Tex. Code Crim. Proc. Ann. art. 58.152 (providing for the use of pseudonyms in order to maintain confidentiality of files and records of victims of sexual assault).

during it? I mean, you haven't given me a time. I need a little more specificity.

[DEFENSE ATTORNEY 1]: Your Honor, they are repetitious leading up to this. And, Your Honor, there's one on the morning of the report.

THE COURT: Okay. Well, that might be relevant. What is the one on the day of the alleged incident?

[DEFENSE ATTORNEY 1]: She is moving very seductively while putting on eye liner. She's -- it's --

[DEFENSE ATTORNEY 2]: Judge, if I may, it's about a 15-second clip where she is wearing --

[DEFENSE ATTORNEY 1]: The same hoodie.

[DEFENSE ATTORNEY 2]: The same hoodie that's already been entered into evidence. It's dated from the morning of, and it depicts someone behaving in such a way that is not indicative of someone who's making this outcry.

THE COURT: Okay. So --

[DEFENSE ATTORNEY 1]: It does show her state of mind.

THE COURT: What date is it? It's the day after the incident?

[DEFENSE ATTORNEY 1]: Yes, Your Honor.

[DEFENSE ATTORNEY 2]: It's the morning of.

[DEFENSE ATTORNEY 1]: It's [sometime] between when she went to her father's house and when Officer Lindeman collected the clothing. And there's a window of opportunity there less than two hours.

THE COURT: Okay. Response from the State?

[THE STATE]: By implication, she posted a video so she's lying is what they are saying, that she's not worthy of belief is what they are

3

saying. If they want to run down this rabbit trail, Judge, I guess so be it. But it's going to open the door to what he did, and what he did is a thousand times worse than what they are saying this girl did. She was 14. Okay. So if they are going to try to go with the she's promiscuous, she's putting on eye liner, therefore she's a whore or promiscuous or she's a liar, that's how desperate they are.

THE COURT: Well, I'm obviously more concerned with complying with the rules of evidence. And prior specific bad acts on any witness do not come in unless they comport with the rules. Okay. And if you're thinking that she looks or says something that can rise to the level of a bad act -- if you're putting on someone to say her reputation is that she's known to be untruthful, that would be permissible absolutely. But you're putting in specific bad acts -- I guess you're trying to show that she has made this up or I don't -- that she didn't look upset maybe after the event. I mean, is that what the tenor of it is?

[DEFENSE ATTORNEY 3]: Judge, I think this is to go to the witness's state of mind, and that's it. It's not -- we're not saying it's criminal. We're not saying it's a bad act. We're saying that her behavior is inconsistent with her allegations, and that's something the jury needs to know.

[DEFENSE ATTORNEY 1]: And I assure the Court I have no intention of arguing promiscuity. I have no intention of --

THE COURT: Well, you just said she seductively put on eye makeup. You used the word seductive, so I'm sorry --

[DEFENSE ATTORNEY 1]: I'm just describing her behavior.

THE COURT: Hold on a second, sir. I'm speaking.

[DEFENSE ATTORNEY 1]: Yes, ma'am.

THE COURT: That sounds disingenuous to me because you used the word seductive. I didn't, you did. So that kind of -- kind of flies in the face of what you're saying. However, I'm not trying to not allow you to put on a case. Why would what she says on a video outside the presence of the jury not be hearsay, not be irrelevant? I mean, and the

4

relevance may be that if you're telling me that it occurred after the alleged incident and that she does not look upset or that kind of thing, then it may become relevant because it may become rebuttal or something. I don't know. I haven't seen it.

[DEFENSE ATTORNEY 1]: And that's exact -- after she testifies, that's exactly where I intend to use it.

THE COURT: Well, then you can approach then because right now I just don't feel comfortable letting it in.

[THE STATE]: And respectfully we would ask that before we get into anything about the complainant on cross-examination that this issue be addressed and that they don't start asking her questions about trying to offer these TikTok videos in cross before the Court has determined whether or not they are admissible because that's what they are going to do. Okay.

THE COURT: I don't -- I'm not going to limit cross-examination. If you want to ask her, did you post some TikTok videos after this, you know, you didn't seem to be all that upset or whatever, or if you -- you know, what did you do afterwards or whatever, did there come a time when you -- I don't know anything about TikTok. I don't know if you can do a video and then post it at a later time or if it has to be live right there. But maybe that would be relevant in a way. I don't know.

[THE STATE]: And our position respectfully, Judge, is that the Court be afforded the opportunity to look at these videos prior to any cross-examination being asked about them. This is a fishing expedition.

THE COURT: Okay. That might be good. Do you have the videos where I can review them?

[DEFENSE ATTORNEY 2]: Uh-huh.

[DEFENSE ATTORNEY 1]: Yes.

…

(Open court. Attorneys and defendant present. Jury not present.)

5

THE COURT: I have reviewed the proposed video that the Defense would like to bring in from TikTok. I don't think at this time I'm going to let it in. So your request to bring it in is denied. Okay. Let's bring the jury in.

[DEFENSE ATTORNEY 1]: Your Honor, I need to perfect this if we can.

THE COURT: That's fine. You can mark it and put it as an exhibit in the record.

[DEFENSE ATTORNEY 1]: Okay.

During Penna's cross-examination, he questioned Amy if she generally used social media, such as TikTok, or the internet and if anyone monitored her social media accounts. Amy confirmed that she has used the internet and TikTok specifically to make "TikToks" with her friends. The defense rested without asking any other questions regarding her internet or social media usage.

On appeal, Penna's argument is twofold: first, the evidence is relevant to the defense and harmful when the trial court denied admitting the TikTok video; second, he argues that the denial violates the confrontation clause of the United States Constitution and his ability to present a full defense.

## A. Constitutional Violation

We will address Penna's constitutional argument first. Penna contends that the trial court denied him the right to present a defense in violation of his constitutional rights by not allowing him to submit the TikTok video to the jury.

To preserve error for appellate review, including a constitutional error, the appellant must make a timely, specific objection to the trial court and obtain a ruling on the objection. Tex. R. App. P. 33.1; *Linney v. State*, 401 S.W.3d 764, 772-73 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The point of error on appeal must correspond to the objection made at trial. *Linney*, 401 S.W.3d at 773 (citing *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)).

Penna did not articulate an objection for constitutional error. At most, he explained and objected to the trial court's comments regarding whether the evidence was relevant. Making an objection or proffer under the Rules of Evidence does not preserve constitutional issues that are not raised. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). Accordingly, Appellant did not preserve these arguments for appeal. *See Ferree v. State*, 416 S.W.3d 2, 7 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

## B. Relevance

Next, Penna argues that the TikTok video was "plainly relevant under Tex. R. Ev[id]. 401, because it had the tendency to make her lying (sic) more probable, it showed her to be manipulative, and her credibility was the necessary foundation for determining the case." He contends that the contested evidence demonstrated that she was not truthful as she "purposefully omitted" the TikTok video's existence during her testimony, and that it showed her state of mind that morning, which Penna

describes as "proud . . . and confident[,]" versus her testimony that she was taking a shower, crying, and calling a friend.

We review the trial court's decision to admit evidence under an abuse of discretion standard. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). "Generally, all relevant evidence is admissible." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); Tex. R. Evid. 402. Relevant evidence is that which has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence. Tex. R. Evid. 401(a). When determining whether evidence is relevant, it is important for courts to examine the purpose for which the evidence is being introduced. *See Moreno v. State*, 858 S.W.2d 453, 464 (Tex. Crim. App. 1993). In determining whether a particular piece of evidence is relevant, the trial judge should ask if a reasonable person would believe that the evidence is helpful in determining the truth or falsity of any fact of consequence. *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990).

Assuming, without deciding, that the trial court abused its discretion when it denied the admission of the TikTok video, Penna has failed to demonstrate harm. "Error in the admission of evidence is non-constitutional error subject to a harm analysis under Rule 44.2(b)[.]" *Jabari v. State*, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing Tex. R. App. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). Rule 44.2(b) requires that we

disregard the alleged error unless it affected Penna's substantial rights. *See* Tex. R. App. P. 44.2(b); *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). A substantial right is affected when the alleged error had a substantial, injurious effect or influence on the outcome. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

The trial court did not limit Penna regarding the TikTok video, other than to state he would not be allowed to admit the video as evidence. The trial court allowed Penna to ask Amy about the TikTok video that she made that morning and her demeanor that morning after she left her grandmother's home. Regarding Penna's assertion that this evidence would demonstrate her lack of credibility or truthfulness to the jury, testimony was admitted through other witnesses that contradicted Amy's testimony about the night of the assault. Her sister and cousin both testified that Amy did not drink that night and contradicted her testimony that she drank when she went to her grandmother's home that night. Testimony was also elicited from her grandmother about Amy's truthfulness. Additionally, testimony was elicited regarding Amy's behavior before the assault, including cutting herself and her reputation. There is no harm in the trial court's exclusion of evidence if the same or similar evidence was elicited from another source. *See Rische v. State*, 746 S.W.2d 287, 291 (Tex. App.—Houston [1st Dist.] 1988), *rev'd and remanded on other grounds*, 755 S.W.2d 477 (Tex. Crim. App. 1988); *see also Garcia-Vazquez v. State*,

9

No. 09-19-00424-CR, 2021 WL 5343492, *4 (Tex. App.—Beaumont Nov. 17, 2021, no pet.) (mem. op., not designated for publication) (holding a defendant was not denied an opportunity to present a complete defense because the information was presented elsewhere). The jury was able to hear conflicting testimony regarding Amy's truthfulness and prior behavior. As such, Penna has not demonstrated that the trial court's exclusion of the TikTok video was harmful. We overrule this issue.

## II. Conclusion

Having overruled Penna's sole issue on appeal, we affirm the judgment of the trial court.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on June 29, 2023
Opinion Delivered January 31, 2024
Do Not Publish

Before Golemon, C.J., Horton and Wright, JJ.