Opinion issued July 18, 2024



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-22-00843-CR**

**NO. 01-22-00844-CR**

**NO. 01-22-00845-CR**

_____

**MANUEL ORTIZ, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 21-CR-1658, 21-CR-1659, 21-CR-1660**

---

## MEMORANDUM OPINION

A jury convicted Manuel Ortiz, Jr. of three counts of providing a prohibited

substance in a correctional facility and assessed concurrent punishments of two

years' confinement for two counts and 30 months' confinement for the third count.[1] On appeal, Ortiz contends: (1) the evidence is insufficient to support his convictions and (2) his rights under the Confrontation Clause of the Sixth Amendment were violated. Because there is sufficient evidence to support his convictions and his Confrontation Clause arguments are not preserved, we affirm.

## Background

Sergeant S. King, the custodian of records for jail mail and jail calls at the Galveston County Jail, intercepted letters addressed to three inmates—T. Nowell, R. Barnes, and J. Tasto—that he found unusual. Under the envelopes' flaps, Sergeant King found thin, orange strips with the inscription "B8." The return address on the letters was to Ortiz's property, and the senders were his tenants. Sergeant King forwarded the letters to the criminal investigation unit.

Detective D. Banda field-tested the orange strips, which tested positive for the opioid buprenorphine, also known as Suboxone. Lab testing confirmed that the substance was buprenorphine. No fingerprints were found on the letters, and they were not tested for DNA.

Detective Banda reviewed several jail calls between Nowell and Ortiz using phrases or words that Detective Banda recognized as codewords for Suboxone, such as "sunflowers," "subway," "sunshine flowers," "sun chip flowers," and "minions."

---

[1] *See* TEX. PENAL CODE § 38.11.

On some calls, voices other than Nowell's and Ortiz's can be heard. Detective Banda explained that the codewords were used to discuss Ortiz sending, or having his tenants (Heather, David, and Fernando) send, Suboxone to Nowell, Barnes, and Tasto in jail. From the call recordings, Detective Banda deduced that Nowell would sell the Suboxone in exchange for money to buy food at the prison commissary.

In the jail calls:

- Nowell told Ortiz to take all of David's "sun chip flowers" and send her dozens of "flowers." Ortiz replied, "I'll send them."

- Ortiz asked Nowell if she got the "lady bugs." She answered no, but said she got "sunflowers" two days before.

- Nowell referred to Ortiz by his first name and told him that a card did not make it to someone and that it had been three weeks. Nowell told Ortiz he "got, got." Ortiz said he sent other "minion" pictures.

- Nowell asked Ortiz if he sent the drawings of the "lady bugs" or the "sunflowers." Ortiz told Nowell that Heather wrote her four times.

- Nowell asked Ortiz if he mailed some pictures. Ortiz said he would send two pictures. Nowell asked for four pictures, with two in each envelope, and Ortiz agreed.

- Nowell told Ortiz that a girl would buy her some stuff. Ortiz told Nowell "okay, gotchu." Nowell told Ortiz to do four for "her." Ortiz said he was going to "get them ready."

- Nowell told Ortiz about a girl named Barnes whose brother would pay Nowell $50. Nowell told Ortiz to "do two" so she would get $100, and Ortiz agreed.

- Ortiz told Nowell he sent pictures to Barnes.

- Ortiz told Nowell that her mom, Tasto, also known as "Old School," got "pulled" by two detectives. Ortiz told Nowell he had not spoken to Tasto in a few days.

3

- Nowell told Ortiz she spoke to "Old School," and told her to shut up.

Detective Banda interviewed Nowell while she was in custody, and she confirmed that she and Ortiz spoke in code to supply her with Suboxone. Although Ortiz was not listed as the sender on the intercepted letters, Nowell told Detective Banda that Ortiz got the Suboxone from his tenant, David, and sent it to her.

After a trial, the jury found Ortiz guilty on all three counts and assessed concurrent sentences of two years' confinement for two counts and 30 months' confinement for the third count. Ortiz timely appealed.

**Sufficiency of the Evidence**

In his first issue, Ortiz argues that the evidence is factually insufficient to support his convictions because there was a lack of physical links and a lack of supporting testimony from inmates. We evaluate the evidence for legal sufficiency instead.

**A.    Standard of Review**

In criminal cases, challenges to the sufficiency of the evidence on matters for which the State bears the burden of proof are reviewed only for legal sufficiency. *See Brooks v. State*, 323 S.W.3d 893, 894–912 (Tex. Crim. App. 2010) (plurality opinion). We do not conduct a separate factual sufficiency review as Ortiz urges. *Id.*; *Malbrough v. State*, 612 S.W.3d 537, 559 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). This is because the Court of Criminal Appeals has determined that the

4

legal sufficiency standard is "the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 895 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). We thus review Ortiz's assertion that the evidence is factually insufficient to support his convictions under the standard of review for legal sufficiency. *Marlborough*, 612 S.W.3d at 559.

We evaluate sufficiency by considering all the evidence, in the light most favorable to the jury's verdict, to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). We defer to the factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, and we consider only whether the factfinder reached a rational decision. *See Malbrough*, 612 S.W.3d at 559; *see also Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (reviewing court's role "is restricted to guarding against the rare occurrence when a fact finder does not act rationally").

Sufficiency of the evidence should be measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Hardy v. State*, 281 S.W.3d

5

414, 421 (Tex. Crim. App. 2009). We must consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Malbrough*, 612 S.W.3d at 559; *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Circumstantial and direct evidence are equally probative in establishing the defendant's guilt, and circumstantial evidence alone can be sufficient. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). The State need not disprove all reasonable alternative hypotheses inconsistent with a defendant's guilt for the evidence to be sufficient. *Wise*, 364 S.W.3d at 903.

**B.    Analysis**

The jury convicted Ortiz of providing buprenorphine, a controlled substance, to Nowell, Tasto, and Barnes, who were inmates in the Galveston County Jail. Under Texas Penal Code section 38.11(a), "[a] person commits an offense if the person provides . . . [a] controlled substance . . . to a person in the custody of a correctional facility." TEX. PENAL CODE § 38.11(a)(1). A correctional facility includes a county jail. *Id.* §§ 1.07(a)(14)(A), 38.11(f)(6)(A). Each of Ortiz's charges authorized the jury to convict him as a principal or a party.

Ortiz does not dispute that the three intended recipients of the letters were inmates in the Galveston County Jail or that the letters contained a controlled substance. He argues only that there was insufficient evidence linking him to the

6

offense because he was not named in the return addresses and no forensic evidence connected him to the envelopes.

"[T]he law requires no particular type of evidence." *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). That there is a lack of physical or forensic evidence is something for the factfinder to consider as it weighs the evidence. *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). Direct and circumstantial evidence are treated equally in establishing guilt, and circumstantial evidence alone may suffice. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Hooper*, 214 S.W.3d at 13). Each fact need not point directly and independently to the defendant's guilt, "as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

Ortiz does not address all the evidence the State presented to the jury from which a rational factfinder could have linked him to the letters. *See Clayton*, 235 S.W.3d at 778 (reviewing courts must consider "all of the evidence," including evidence properly and improperly admitted, in legal sufficiency analysis). Ortiz focuses instead on the absence of his name on the envelopes and the lack of DNA evidence linking him to the letters. But each fact need not point directly and independently to his guilt if the cumulative force of all the incriminating evidence supports his conviction. *See Hooper*, 214 S.W.3d at 13.

The record reflects that letters were sent to Nowell, Barnes, and Tasto while they were inmates in the Galveston County Jail. The envelopes contained buprenorphine, a controlled substance. In the calls, Nowell and Ortiz used codewords to talk about sending letters to the jail and discussed the people who would send and receive the letters. Nowell also told Detective Banda that Ortiz sent the controlled substance into the jail. Even though some evidence suggests different senders—considering Ortiz was not listed on the envelopes—the jury had the exclusive role as factfinder to weigh the evidence and the witnesses' credibility, and we defer to its determinations. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008) ("The jury is the exclusive judge of the facts proved, and of the weight to be given to testimony, unless the law provides that the proof of any particular fact is to be taken as either conclusive or presumptive evidence of the existence of an ultimate fact, or where the law specifically directs that a certain degree of weight is to be attached to a particular item or species of evidence."); *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (resolving inconsistencies in testimony in favor of jury's verdict). As for Ortiz's complaint that there was a lack of DNA and fingerprint evidence, the State need not provide this type of evidence to meet its burden. *See Arrellano v. State*, 555 S.W.3d 647, 651 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (explaining that State does not have to present DNA, fingerprint, or video evidence to meet its burden when other evidence is sufficient).

Viewing the evidence in the light most favorable to the verdict, a rational factfinder could have found beyond a reasonable doubt that Ortiz was guilty of the charged offense in each case. *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) ("[M]easuring the evidentiary sufficiency with explicit reference to the substantive elements of the criminal offense as defined by state law."). That there was not a specific type of evidence presented does not mean a factfinder could not reasonably convict Ortiz from the evidence presented.

We overrule Ortiz's first issue.

## Confrontation Clause

In his second issue, Ortiz contends that the admission of his own statements on the jail calls and Detective Banda's testimony relying on Nowell's statements implicating Ortiz violated his Sixth Amendment right to confront the witnesses against him at trial.[2] The State responds that we should not review this issue because it is based on more than one legal theory and thus is multifarious. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010); *see also* TEX. R. APP. P. 38.1. Even if

---

[2] To the extent Ortiz's brief challenges anything other than his own statements and the testimony from Detective Banda, it is inadequately briefed and therefore waived. See Tex. R. App. P. 38.1(i) (requiring an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); Wilson v. State, 473 S.W.3d 889, 900–01 (Tex. App.—Houston [1st Dist.] pet. ref'd) ("[A]n appellant waives an issue on appeal if he does not adequately brief that issue, i.e., by presenting supporting arguments and authorities."); *see also Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (appellate court is not required to make arguments for appellant).

9

the issue is multifarious, we may review it in the interest of justice. *See id.* But nothing is presented for our review because the issue is not preserved.

## A. Standard of Review

We review evidentiary rulings for abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Id.* But even if an evidentiary ruling is erroneous, it is not a ground for reversal unless it affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Substantial rights are affected if the error had a substantial and injurious influence on the judgment. *Coble*, 330 S.W.3d at 280.

The Confrontation Clause gives a criminal defendant the right to confront the witnesses against him. U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 42 (2004); *Molina v. State*, 632 S.W.3d 539, 543 (Tex. Crim. App. 2021). The Confrontation Clause bars admission of testimonial statements of a witness who does not appear at trial, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford*, 541 U.S. at 51–54).

In general, a statement is testimonial if, under the circumstances, a reasonable person would have understood that law enforcement officers were conducting a

criminal investigation and collecting evidence for a prospective prosecution. *See Wall v.* State, 184 S.W.3d 730, 745 (Tex. Crim. App. 2006). Whether a given out-of-court statement is testimonial is a question of law. *Langham v.* State, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). We therefore review this issue de novo. *Wall*, 184 S.W.3d at 742 ("Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, *i.e.* whether a statement is testimonial or non-testimonial, *de novo*.").

## B. Preservation of Error

The State contends that Ortiz has failed to raise an objection and preserve error on Nowell's statements during her interview with Detective Banda. The State does not argue that Ortiz failed to preserve error on the admission of the jail calls. But the record reflects that Ortiz failed to preserve error on both issues.

To preserve error for appellate review, the appellant must show he made a timely and specific objection at the earliest possible opportunity, obtained an adverse ruling from the trial court, and then his complaint must match the objection made at trial. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014); *see also* TEX. R. APP. P. 33.1(a)(1)(A) (defendant must have "stated the grounds for the ruling that [he] sought from the trial court with sufficient specificity to make the trial court aware of [his] complaint, unless the specific grounds were apparent from the context"). Failure to object at trial waives even constitutional errors. *Yazdchi*, 428

11

S.W.3d at 844 (citing *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008)). To preserve the denial of a confrontation right for appellate review, the defendant must specifically object based on the Confrontation Clause at trial. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); *Craven v. State*, 579 S.W.3d 784, 787 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("To preserve error on Confrontation-Clause grounds, the objector must voice the complaint as soon as the basis for the objection becomes apparent.").

Because "preservation of error is a systemic requirement," it "must be reviewed by the courts of appeals regardless of whether the issue is raised by the parties." *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).

### 1. Jail Calls

At trial, Ortiz did not object to his own statements in the recorded jail calls. Instead, Ortiz argued the State did not intend to call the other unidentified people on the calls, depriving Ortiz of the opportunity to cross-examine them. The State responded that *Crawford* does not apply because statements are nontestimonial when the parties are discussing crimes and there is no anticipation of litigation. Ortiz countered that the phone calls were out-of-court statements under *Crawford*, and, because the jail call system notifies callers that they are being recorded, a reasonable person would expect their statements to be used at a later trial. Ortiz maintained that

12

the failure of the State to call Nowell or the unidentified individuals to the stand violated his rights under the Confrontation Clause.

On appeal, Ortiz argues that *his own* statements on the jail call recordings are not in furtherance of a conspiracy because they "may be dismissed as mere puffing; or, in the alternative, false promises. But, for [Ortiz's] own statement, there are no other factors to consider that [Ortiz] actively planned, supplied, [led], or agreed to actually supply the controlled substance." Essentially, Ortiz claims that because his jail call statements were puffery and false promises, they are testimonial statements subject to confrontation rights under *Crawford*. *See King v. State*, 189 S.W.3d 347, 360 (Tex. App.—Fort Worth 2006, no pet.) ("[S]tatements that are not made in furtherance of a conspiracy, and thus remain hearsay, include those that are . . . mere conversations between conspirators . . . or . . . 'puffing' or 'boasting' by co-conspirators."); *see also Crawford*, 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or *statements in furtherance of a conspiracy*." (emphasis added)).

To preserve error, a party's contention on appeal must match the specific complaint made in the trial court. *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."). Ortiz raises a

13

Confrontation Clause issue on an entirely different legal basis on appeal than he did at trial. Some jail calls admitted into evidence included the voices of Nowell, Ortiz, and other unidentified individuals. In the trial court, Ortiz's Confrontation Clause objection regarded the right to confront these unidentified individuals and Nowell. On appeal, however, he complains about his own statements on the jail calls, not the statements of any unidentified person or Nowell. Ortiz argues that his own statements were hearsay and mere puffery rather than nontestimonial co-conspirator statements.[3] Nowhere in the record does Ortiz make a hearsay objection on grounds that his own statements were mere puffery. The contentions on appeal thus do not track the complaints made at trial. The trial court could not have erred where it had no chance to rule on Ortiz's objection. *See Veal v. State*, 682 S.W.3d 577, 584 (Tex. App.—Houston [1st Dist.] 2023, pet. ref'd) ("For reasons of judicial economy and comity, an appellate court must find that a party has failed to preserve error if the

---

[3] Ortiz's argument is further diminished by his reliance on his own statements to invoke *Crawford* protections by categorizing them as hearsay. A party's own statements are not hearsay and "are admissible on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements." *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999); *see also* TEX. R. EVID. 801(e)(2)(A).

Even if we were to consider the Confrontation Clause complaint made at trial, multiple courts have ruled that statements in recorded jail calls are not testimonial and do not implicate the Confrontation Clause. *See Garcia v. State*, No. 01-21-00349-CR, 2022 WL 17981855, at *6 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication).

party fails to first allow the trial court an opportunity to make a ruling." (quoting *Cruse v. State*, 882 S.W.2d 50, 52 (Tex. App.—Houston [14th Dist.] 1994, no pet.)).

Therefore, this issue was not preserved and is waived. *See Compton v. State*, 666 S.W.3d 685, 714 (Tex. Crim. App. 2023) (holding that appellant failed to preserve error for review where the objection did not match the complaint raised on appeal); *see also* TEX. R. APP. P. 33.1(a).

## 2. Interview

Ortiz did not object to the admission of Nowell's statements from her custodial interview. Nowell's statements in her custodial interview with Detective Banda were first broached by Ortiz on cross-examination. The State argued that the cross-examination opened the door to questions about Nowell's interview, and Ortiz raised no objection:

> [STATE]:     [Defense] asked Detective Banda multiple questions regarding what [Nowell] told him in their interview. And based on multiple questions he asked Detective Banda, we believe that opens the door for us to be allowed to ask questions regarding that interview . . . .
>
>     One of the questions that was asked was: Did [Nowell] ever tell you that the defendant sent her drugs? And his answer was: No . . . And we would like to literally ask that exact same question and have him refer to his report and answer it with what we believe is the correct answer . . . .
>
> [DEFENSE]:     I don't see an issue with him asking . . . I mean, I would like to come up with one, but I don't see a problem.

"When defense counsel pursues a subject that would ordinarily be outside the realm of proper comment by the prosecutor, the defendant opens the door and creates a right of reply for the State." *Credille v. State*, 925 S.W.2d 112, 116 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (citing *Parr v. State*, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977)); *see also* TEX. R. EVID. 107 ("If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject.").

Although Nowell's interview may not have been admissible under the Confrontation Clause, Ortiz opened the door with his cross-examination of Detective Banda and then failed to raise an objection. *See Craven*, 579 S.W.3d at 787 (holding that appellant failed to raise Confrontation Clause objection during trial when evidence was admitted thus waiving complaint on appeal). We therefore conclude that, because counsel did not object based on the Confrontation Clause to Detective Banda's testimony about Nowell's statements, Ortiz did not preserve this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(1).

We overrule Ortiz's second issue.

## Conclusion

We affirm the trial court's judgment.


Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).